UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| In re: <br> **PHOENIX TURF FARMS, LLC,** <br><br> Debtor. <br> _____ | } <br> } <br> } <br> } <br> } | **Case No. 07-40545-JJR-12** |
| **PHOENIX TURF FARMS, LLC,** <br><br> Plaintiff, <br> v. <br><br> **HANSEN MUELLER CO., and** <br> **MACK PRUITT,** <br><br> Defendants, <br><br> v. <br><br> **PHOENIX TURF FARMS, LLC; LINDA B.** <br> **GORE, TRUSTEE; MACK PRUITT; ALABAMA** <br> **DEPARTMENT OF REVENUE; USDA FARM** <br> **SERVICE AGENCY; FRONTIER BANK; ALABAMA** <br> **TRUST BANK; MICHAEL KLINNER; BILL** <br> **WAKEFIELD; PHOENIX DEVELOPMENT, INC.;** <br> **and, REGIONS BANK,** <br><br> Counterclaim Defendants, Cross- <br> Claim Defendants, and Third <br> Party Defendants. | } <br> } <br> } <br> } <br> } <br> } <br> } <br> } <br> } <br> } <br> } <br> } <br> } <br> } <br> } <br> } <br> } <br> } <br> } <br> } <br> } <br> } <br> } <br> } <br> } <br> } | **AP No. 09-40004-JJR** |

**OPINION ON MOTION FOR SUMMARY JUDGMENT**

This matter came before the Court on the Motion for Interpleader, Summary Judgment, and Attorney Fees (AP Doc. 45 and herein, the "SJ Motion") filed by defendant, and counterclaim, cross-claim and third party plaintiff, Hansen Mueller Co. ("Hansen"). The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. This is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2); therefore, the Court has authority to enter a final order. In compliance with Rule 7052(a) of the Federal Rules of Bankruptcy Procedure, the following shall constitute the Court's findings of fact and conclusions of law.[1]

PROCEDURAL HISTORY AND FINDINGS OF FACTS:

This adversary proceeding was commenced when Phoenix Turf Farms, LLC ("Debtor") filed a Complaint (AP Doc. 1) against Hansen and Mack Pruitt ("Pruitt") asserting various claims with respect to approximately $97,000 being held by Hansen. The $97,000 are proceeds (the "Proceeds") from the sale of a quantity of wheat harvested from farm land owned by the Debtor.[2] Following the sale, but before Hansen released the Proceeds, various parties claimed an interest in the Proceeds. Hansen responded to the Complaint by filing an Answer and Counterclaim, Cross Claim, and Third Party Complaint for Interpleader (AP Doc. 6), which was later amended (AP Doc. 64 and herein the "Amended Interpleader"). In the Amended Interpleader, Hansen asserted that as the stakeholder of the Proceeds it was exposed to multiple liability because of claims by the Debtor and Pruitt, as well as several others parties who were joined by Hansen as third-party defendants.

According to the Amended Interpleader the following claimants may hold security interests in, or liens on the Proceeds: Phoenix Turf Development, Inc., Alabama Department of Revenue, USDA Farm Service Agency, Frontier Bank, Regions Bank, and Alabama Trust Bank. Additionally, the Debtor's principal and sole member,[3] Michael Klinner ("Klinner") claims the proceeds as his

---

[1]All "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2]In the Complaint, the Debtor asserted the Proceeds were approximately $90,000; however, the Affidavit of Christopher Rau (AP Doc. 47) filed in support of Hansen's SJ Motion, confirmed the amount of the Proceeds was $97,109.87. No party contested the accuracy of this amount.

[3]The Debtor is an Alabama limited liability company, and Klinner is its sole member.

2

Case 09-40004-JJR    Doc 100    Filed 10/15/09    Entered 10/15/09 16:25:09    Desc Main
Document      Page 2 of 15

individual property; Pruitt claims all or a portion of the Proceeds under a joint venture or similar arrangement with either the Debtor or Klinner; Bill Wakefield may claim the Proceeds by virtue of a tax deed covering the Debtor's land; and the Chapter 12 Trustee, Linda Gore ("Trustee"), claims the Proceeds as property of the Debtor's bankruptcy estate.

Christopher Rau, Hansen's controller, filed an Affidavit (AP Doc. 47) in support of the SJ Motion. According to Rau's Affidavit, Hansen acted as a broker in a transaction in which 14,407.99 bushels of wheat grown on the Debtor's land was sold to Koch Foods. A copy of the Purchase Contract (the "Wheat Contract") between the Debtor and Hansen was attached to the Debtor's Response (AP Doc. 91) to the SJ Motion. Hansen's signature on the Wheat Contract was dated June 26, 2008 and the Debtor's signature was dated July 1, 2008.[4] Rau stated that from July 3, 2008 until August 5, 2008 Hansen held the Proceeds with the expectation that the parties who where then asserting claims would reach a settlement among themselves and authorize Hansen to distribute the Proceeds.[5]

On August 5, 2008 negotiations between the claimants ended when Klinner's attorney made a demand on Hansen for the immediate payment of the Proceeds to Klinner, *individually*. Klinner's attorney sent the following letter to Hansen:

VIA FAX ONLY – 663-5107

---

[4] Klinner signed the Wheat Contract on behalf of the Debtor, and not in any individual capacity.

[5] According to Rau's Affidavit, between July 3 and August 5, 2008 claims were being asserted by Klinner, Pruitt and Alabama Trust Bank.

3

>    Randy Anderson [Hansen's agent]
>
>    Re: *My Client*: Michael Klinner
>
> Dear Mr. Anderson:
>
>    If you will recall the wheat crop from the *property of my client*, *Mr. Klinner*, I would request that you provide me an update as to the status of the sale of the grain. In addition, I request that payment from the sale of the grain be *forwarded to Mr. Klinner* in care of my office immediately upon receipt.
>
>    When may payment for the grain be expected, as *Mr. Klinner* has certain expenses related to growing of this crop which need to be paid?[6]

Rau stated Hansen received notice of the bankruptcy from the Trustee on or about September 1, 2008.[7] Nonetheless, Hansen took no steps to turnover the Proceeds to the Trustee or the Court until February 5, 2009 when it filed its Answer (AP Doc. 6) to the Complaint and therein sought permission to interplead the Proceeds.

---

[6] Letter to Hansen from Klinner's attorney, Thomas E. Baddley, Jr., attached as Exhibit D to Rau's Affidavit (emphasis added).

Klinner's counsel was Baddley & Mauro, L.L.C. of Birmingham, while the Debtor's counsel, who filed the bankruptcy petition and the Complaint, is Campbell & Campbell, P.C. of Talladega. Apparently, neither law firm knew of the other's involvement with respect to the Proceeds until some time after Baddley sent his demand on August 5, 2008. In fact, it became apparent to the Court that Klinner neither informed Baddley that the Debtor was in bankruptcy nor that it was the Debtor and not Klinner who had a claim to the Proceeds. Klinner retained his personal counsel to pursue the Proceeds on his behalf rather than retaining Debtor's counsel who would have known of the bankruptcy and the Debtor's claim to the Proceeds. Klinner's actions violated his fiduciary duty owed to the Debtor who is a chapter 12 debtor in possession. Moreover, as the Debtor's sole member, Klinner had a common law duty not to direct payment of the Proceeds to himself when they were the property of the Debtor.

[7] Paragraph 11, Rau's Affidavit. Actually, the notice from the Trustee was a "Direction for Deduction" which is usually sent by a chapter 13 trustee to an employer of a chapter 13 debtor instructing the employer to make withholdings from a debtor's wages to pay chapter 13 plan payments. Regardless, the Direction for Deduction was sufficient to put Hansen on notice of the Debtor's pending bankruptcy case.

4

After this adversary proceeding was commenced, two civil actions originally filed in the Circuit Court of Talladega County, Alabama were removed to this Court and became bankruptcy adversary proceedings: *Klinner v. Pruitt, et al*, AP 09-40046 (the "Klinner AP") and *Alabama Trust Bank, N.A. v. Klinner, et al*, AP 09-40047 (the "Alabama Trust AP" and together with the Klinner AP, the "Removed APs"). The Removed APs involve core proceedings that should be adjudicated by this Bankruptcy Court to assure the estate is protected, especially in light of the not-so-veiled attempts by Klinner to personally appropriate estate monies and claims to the exclusion of the Debtor, which he controls.[8] More specifically, the Klinner AP asserts claims that, if valid, belong to the Debtor, not Klinner, and are property of the bankruptcy estate. And the Alabama Trust AP seeks a judicial determination of the proper disposition of over $21,000 that may be property of the estate. In his answer to Alabama Trust's interpleader complaint, Klinner alleged in regards to the $21,000 that he "is owed funds" and "that he has a claim for the proceeds of said checks." Klinner made no mention of the Debtor or its bankruptcy case.

On June 17, 2009 the Court entered an Order (AP Doc. 89) stating that all outstanding issues in this adversary proceeding would be taken under advisement, and if appropriate, would be

---

[8]On June 9, 2009 Klinner testified with regard to the Removed APs. Based on Klinner's testimony, the Amended Complaint filed in the Klinner AP, and comments by Klinner's counsel, it became obvious to the Court that originally Klinner did not intend to recover the Proceeds or claims against Pruitt and others for the Debtor's estate, but rather was pursuing the Proceeds and claims individually. Klinner's complaint in the Klinner AP fails to mention the Debtor even though the alleged claims arose in large part, if not totally from farming activity conducted on the Debtor's property and the same wheat crop sold for the Proceeds. The written demand for the turnover of the Proceeds by Klinner's attorney never mentioned the Debtor, and was made on behalf of Klinner individually, even though the Wheat Contract was entered into by the Debtor. And the checks which are the subject matter of the Alabama Trust AP are payable to Klinner and Pruitt, although they apparently represent sale proceeds from crops grown on the Debtor's property. See also n. 6 *supra*.

5

disposed of by a ruling on the SJ Motion; all parties were given until June 30, 2009 to respond to the SJ Motion.[9]

Hansen made no claim to the Proceeds and asserted in the Amended Interpleader that it is entitled to join the several claimants for interpleader pursuant to Rule 7022(a) because it is exposed to multiple claims of liability. In the SJ Motion, Hansen asked that: (i) judgment be entered in its favor on all claims asserted against it in the Complaint; (ii) the Court permit the Proceeds to be paid into the registry of the Court pursuant to Rule 7022; (iii) Hansen be released and discharged from any further liability related to the Proceeds, and all parties be enjoined from asserting any claims against Hansen with respect to the Proceeds; (iv) Hansen be awarded attorney's fees and expenses from the Proceeds; (v) Hansen be dismissed from this action; and (vi) the Court adjudicate the claims of the remaining parties to the Proceeds. No party opposed the relief sought by Hansen except the Debtor.

In its Response (AP Doc. 91) to the SJ Motion, the Debtor argued, and this Court agrees, that when Hansen was notified by the Trustee of the Debtor's bankruptcy, Hansen had a duty under Section 542 of the Bankruptcy Code[10] to immediately turnover the Proceeds to the Trustee.[11] The

---

[9]Additionally, the June 17th Order referred the Removed APs to J. Thomas Corbett, the Chief Deputy Bankruptcy Administrator, for mediation. In his Report to the Court dated August 14, 2009 (AP Doc. 92), Corbett advised that the mediation did not result in a settlement.

[10]11 U.S.C. § 101 *et seq* and herein the "Bankruptcy Code." All "Section" references are to a section, subsection or other subdivision of the Bankruptcy Code.

[11]The Debtor also claimed Hansen violated Section 543(b)(1), (2) by not turning over the Proceeds to the Trustee. That Section applies to "custodians" as defined in Section 101(11), but Hansen does not qualify as a custodian under that definition.

Actually, Section 542(b) may be the more appropriate statutory vehicle for recovery of the Proceeds. Rau's Affidavit describes Hansen's involvement in the sale of the wheat as a broker operating between Koch Foods as buyer and the Debtor as seller; however; the Wheat

6

Debtor did not mention Section 542 in its Complaint, but rather alleged that Hansen should be held in contempt for violating the automatic stay imposed by Section 362(a) when it failed to turnover the Proceeds to the Trustee after receiving her Direction for Deduction.[12] The Complaint also demands that Hansen be held in contempt for allegedly violating this Court's Order (Bk Doc. 45) confirming the Debtor's chapter 12.

In her Answer (AP Doc. 56) to the Amended Interpleader, the Trustee denied that any party, other than the Trustee is entitled to the Proceeds. She also stated that she "will file a counter-claim and cross claim for said monies [i.e. Proceeds] with a claim for damages, if appropriate." No counter or cross claims were filed by the Trustee, and she did not file a response opposing the relief sought by Hansen in its SJ Motion.

## CONCLUSIONS OF LAW:

---

Contact itself appears to place the obligation on Hansen to pay the purchase price for the wheat to the Debtor. If so, then Hansen is not "in possession, custody, or control" of the Proceeds as required under Section 542(a), but rather "owes a debt that is property of the estate and that is matured" that should be paid to the Trustee pursuant to Section 542(b). In either event, whether the Proceeds are property in possession of Hansen or a debt owed by Hansen, they are, at least in part, property of the estate.

[12]A copy of the Trustee's Direction for Deduction was attached as an exhibit to the Complaint, and was identified by Rau in his Affidavit as having been received by Hansen on or about September 1, 2008.

In paragraph 11 of the Complaint, the Debtor alleges that "[Hansen] has failed and/or refused to turn over the [Proceeds] to the Trustee . . . [and such] failure and/or refusal to turn over the [Proceeds] to the Trustee was willful and/or intentional." Although the Complaint did not specifically refer to Section 542, the allegations are sufficient to state a claim arising from Hansen's failure to turnover the Proceeds to the Trustee after receiving notice of the pending bankruptcy case. Indeed, Section 362(a)(3) extends the stay to the exercise of control over property of the estate.

7

*Burden of Proof*

Rule 56 of the Federal Rules of Civil Procedure is made applicable to Rule 7056 in bankruptcy proceedings. *Asbestos Settlement Trust v. City of New York (In re Celotex Corp.)*., 487 F.3d 1320, 1328 (11th Cir. 2007). Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229 (11th Cir. 2003). The Court may consider pleadings, discovery, and affidavits submitted in ruling on such a motion. *Id.* The burden of proof lies with the movant, and the Court must view all materials presented and all factual inferences in the light most favorable to the non-moving party. *Id.*

*Interpleader*

In its Amended Interpleader and SJ Motion, Hansen asked that the Court direct it to pay the Proceeds into the registry of the Court pursuant to Rule 7022. There are two stages to any interpleader action brought under Rule 7022. *See* 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* Civ. 3d § 1719. During the first stage: (i) the court should direct the stakeholder to deposit the contested funds in the court registry; (2) if the stakeholder makes no claim to the funds, the court must determine whether to discharge the stakeholder from any further claims with respect to the disputed funds; and (3) if requested by the stakeholder, the court must determine whether the stakeholder is entitled to reimbursement of all or a portion of its expenses, including attorneys' fees, incurred in connection with the interpleader, by deducting the same from the funds. *Id*. During the second stage the claimants are required to assert their claims to the funds for adjudication by the court. Hansen makes no claim to the Proceeds, so the SJ Motion only involves the first stage of the interpleader.

8

Since Hansen makes no claim to the Proceeds, and no other party objected to Hansen's proposal to deposit the Proceeds with the registry, Hansen's request that it be directed to pay the Proceeds into the registry of the Court is due to be granted.

*Compensatory Damages*

In its Complaint, the Debtor did not specifically demand that Hansen turnover the Proceeds, either to the Debtor or Trustee. Nonetheless, the compensatory damages sought by the Debtor obviously would include recovery of the Proceeds. The Court's ruling that Hansen pay the Proceeds into the registry effectively disposes of the Debtor's demand for the Proceeds; however, the Debtor's demand for compensatory damages goes beyond recovery of the Proceeds.

A seller's remedy for breach of contract for delivered goods is recovery of compensatory damages in the amount of the unpaid purchase price. "When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under Section 7-2-710, the price . . . [o]f goods accepted." Ala. Code § 7-2-709(1)(a). Incidental damages described in § 7-2-710 are those incurred in connection with stopping delivery, transportation, care and custody of goods after the buyer's breach, or the return or resale of the goods – none of which apply here. Ala. Code § 7-2-710. Moreover, Section 542 contains no provisions for recovery of damages beyond the property or debt that is required to be turned over or paid to the trustee. *M.S.V. Inc. v. Bank of Boston (In re M.S.V., Inc.)*, 91 B.R. 721, 729 (D. Mass. 1989).

Nonetheless, Hansen did not respond to the Trustee's Direction for Deduction received on September 1, 2008 until February 5, 2009, when it tendered the Proceeds via interpleader, and then only after being sued by the Debtor. Hansen offered no explanation justifying its continued retention of the Proceeds after receiving the Trustee's Direction for Deduction. Although damages

9

Case 09-40004-JJR   Doc 100   Filed 10/15/09   Entered 10/15/09 16:25:09   Desc Main
Document      Page 9 of 15

beyond the purchase price may not be recoverable, to avoid unjust enrichment it does appear Hansen should be required to pay interest for the period during the delay unless it can come forward with proof the delay was justified.[13]

Thus, with the possible exception of interest, Hansen is entitled to summary judgment on all claims asserted in the Complaint for compensatory damages.

*Punitive Damages and Attorney's fees*

The Debtor also demanded punitive damages and attorneys' fees for Hansen's alleged violation of the automatic stay. Punitive damages and attorneys' fees may be recovered for a willful violation of the stay only by an *individual* debtor. Section 362(k)(1). The Debtor is a limited liability company. Thus, Hansen is entitled to summary judgment on the claims asserted in the Complaint for punitive damages and attorney's fees.

*Contempt*

---

[13] During the negotiations in July and August 2008 among Klinner, Pruitt, Alabama Trust and Hansen, it was Klinner that kept the Debtor's bankruptcy case, and indeed the Debtor's very existence, under wraps. It was not until the Trustee sent out her Direction for Deduction that the true status of the Debtor became known to Hansen and apparently the other parties who where then making claims to the Proceeds. Based on these undisputed facts, Hansen had the right to withhold the Proceeds from July until September 1, 2008 and perhaps longer. The delay during this time can be attributed in large part to Klinner's misuse of his control over the Debtor, and it is easy to understand why Hansen was reluctant to pay the Proceeds over to Klinner, Pruitt or Alabama Trust while they argued over the Proceeds, and threatened Hansen with litigation. But there was no explanation offered by Hansen of why it failed to promptly honor the Trustee's Direction for Deduction or file an interpleader action for over five months after receiving notice of the Debtor's bankruptcy on September 1, 2008.

Unless facts later proven show otherwise, to prevent unjust enrichment Hansen should pay interest for the time it unjustifiably retained the Proceeds. *National Union Fire Ins. Co. of Pittsburgh, PA., v. The Official Unsecured Creditors' Committee of Technical Equities Corp. (In re Technical Equities Corp.)*, 163 B.R. 350 (Bankr. N.D. Calif 1993). Accrued interest during this period will likely be a nominal sum, especially if it is based on the 52-week Treasury bill rate. 28 U.S.C. § 1961.

10

The Debtor asked the Court to hold Hansen in contempt for failing to honor the Trustee's Direction for Deduction and violating the order confirming the Debtor's chapter 12 plan. The Direction for Deduction is not a court order and contempt would, therefore, not be an appropriate remedy; and there is nothing in the confirmation order that was violated by any delay in a turnover of the Proceeds.

An argument can be made that Hansen violated the automatic stay by continuing to hold the Proceeds after receiving notice of the Debtor's bankruptcy. Such an argument would require a finding that the Proceeds were property of, rather than a debt owing to the estate because Section 363(a)(3) prohibits exercise of control over *property* of the estate, but says nothing about failing to pay a debt owing to the estate. And while it may be appropriate under certain circumstances to hold a party in contempt who intentionally violates the automatic stay, the facts in this case do not support such a holding against Hansen. While the Trustee's Direction for Deduction put Hansen on notice of the Debtor's bankruptcy, there is nothing in the record indicating the Trustee or Debtor followed-up with a demand for turnover of the Proceeds until the Debtor filed its Complaint. If further demands had been made and ignored, then contempt might be appropriate assuming Hansen was withholding property of the estate as opposed to withholding payment of a debt owed to the estate.

### *Release of Hansen*

Other than the Debtor, no party filed any opposition to the SJ Motion. The Trustee stated in her Answer to the Amended Interpleader she would "file a counter-claim and cross claim . . . if appropriate" but no such claim was filed. Alabama Trust filed a Consent (AP Doc. 86) in which it consented to the entry of summary judgment in favor of Hansen on the issue of interpleader relief,

11

but "with a reservation of the issue of attorneys fees." The Alabama Department of Revenue filed a similar Consent (AP Doc. 88) "on the issue of its interpleader relief."

As stated above, Hansen is entitled to summary judgment in its favor on all claims for damages and contempt asserted in the Complaint, with the possible exception of liability for interest. Accordingly, the Court finds that, upon paying the Proceeds into the registry of Court, Hansen is due to be released from any further liability for claims associated with the Proceeds, except a possible claim for interest; provided such release shall be limited to claims of the parties to this Adversary Proceeding who have been joined by way of sufficient service of process or who voluntarily entered an appearance herein. Such parties shall be enjoined from commencing an action against Hansen in any court based on any claim connected with the Proceeds.

### *Hansen's Attorneys' Fees and Expenses*

In its Amended Interpleader and SJ Motion, Hansen asked the Court to award attorneys' fees and expenses it incurred in connection with this Adversary Proceeding. If allowed, such an award would be deducted from the Proceeds.

The Eleventh Circuit held that "an award of attorneys' fees and costs in an interpleader action in bankruptcy is an equitable matter that lies within the sound discretion of the bankruptcy court." *Chase Manhattan Bank v. Mandalay Shores Cooperative Housing Assoc., Inc.* (*In re Mandalay Shores Cooperative Housing Assoc., Inc.*), 21 F.3d 380, 382-83 (11th Cir. 1994). The following factors should be considered by the court when determining whether such an award is appropriate: (i) will the allowance of fees and costs deplete the fund; (ii) is it part of the stakeholder's ordinary business to file interpleader actions; (iii) is the stakeholder innocent or did it contributed to the controversy; (iv) does the stakeholder have an interest in the outcome of the proceeding; (v) did the

stakeholder unduly delayed the proceedings; (vi) are the fees and costs reasonable; and (vii) did the stakeholder contribute to the preservation of the fund? *See In re Mandalay Shores Cooperative Housing,* 178 B.R. 879, 882 (Bankr. M.D. Fla. 1995) (citing 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* Civ. 3d § 1719).[14] All but two of the above factors support an award to Hansen. The two exceptions are: Is Hanson innocent, or did it contributed to the controversy? And did Hansen unduly delay the proceedings?

It was reasonable for Hansen to hold the Proceeds during July and August 2008 while Klinner, Pruitt and Alabama Trust argued over who was due the money, and threatened to sue Hansen if it paid the Proceeds to the wrong claimant. However, that changed on September 1, 2008 when the Trustee notified Hansen of the Debtor's pending bankruptcy case, and claimed the Proceeds as property of the estate. Compliance with Section 542 is not optional and it provides no grace period. Section 542(a) mandates that "an entity . . . in possession . . . of property that the trustee may use . . . under section 363 . . . *shall deliver* to the trustee, and account for, such property." 11 U.S.C. § 542(a)(emphasis added). Section 542(b) requires the same of an entity which owes a debt that is property of the estate. Hansen did not deliver or pay the Proceeds to the Trustee, and did not take steps to rid itself of the Proceeds until after the Debtor commenced this adversary proceeding when Hansen responded with its interpleader. Upon learning the Proceeds were likely property of or payable to, the bankruptcy estate and subject to the Trustee's claim,

---

[14]Two law firms represented Hansen in these proceedings: Erickson & Sederstrom, P.C. of Omaha, Nebraska, and Norman, Wood, Kendrick & Turner of Birmingham, Alabama. Matthew V. Rusch with the Omaha firm filed an affidavit (AP Doc. 53) to substantiate his firm's fees and expenses, and Mark P. Williams with the Birmingham firm did the same for his firm (AP Doc. 54). The fees and expenses of the two firms total $15,342.81. The attorneys' fees and expenses are approximately 18% of the Proceeds, not inconsequential, but their allowance would not deplete the Proceeds and the amount is not per se unreasonable for the work performed.

13

Hansen should have either promptly paid the Proceeds to the Trustee and informed the claimants to file their claims in the chapter 12 case, or if Hansen was uncomfortable with that course of action, it should have immediately filed an interpleader action and tendered the Proceeds to the Court. Hansen did neither. While Hansen did nothing that contributed to the dispute among the several claimants, it was Hansen's refusal to promptly comply with Section 542, or alternatively tender the Proceeds via interpleader that prompted the Debtor to file the Complaint. If Hansen had timely responded to the Trustee's Direction for Deduction or filed an interpleader, the Debtor would have had no basis for filing this adversary proceeding seeking to recover the Proceeds and Hansen would not have been required to respond to the averments against it in the Complaint. Thus, even though Hansen is making no claim to the Proceeds, it did contribute to the controversy by unjustifiably retaining the Proceeds until it was hailed into court by the Debtor.

     This apparent undue delay is a significant negative factor in considering whether to award Hansen its attorneys' fees and expenses for two reasons. First, a substantial portion of Hansen's legal fees were incurred in the defense of the claims asserted in the Complaint, not simply the interpleader. A review of the time and billing records submitted by Hansen's attorneys shows approximately one-half of the fees were incurred for legal services geared more toward the general defense of the allegations in the Complaint as opposed to interpleader. Hansen is not entitled to recover fees associated with non-interpleader legal services. Second, in light of what appears to have been an unjustified delay in tendering the Proceeds, the Court finds that the facts presented by Hansen in support of the SJ Motion do not justify an award of those fees and expenses actually incurred with respect to the interpleader. Hansen will have the opportunity to prove at trial that the delay in tendering the Proceeds was justified, but at this juncture no such justification can be found

14

in the record.[15]

Pursuant to Rule 9021 a separate Order will be entered in conformity with this Opinion.

Dated: October 15, 2009

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge

---

[15]This Opinion does not find that Hansen was required to immediately pay the Proceeds to the Trustee or file an interpleader on September 1, 2008, the day it received the Trustee's Direction for Deduction. A reasonable time should be allotted to Hansen for either a response to the Trustee's demand or the preparation and filing of an interpleader action.

If Hansen can prove the delay was justified it may be entitled to an award of attorneys' fees and expenses attributable to the interpleader, and the same proof may dissuade the Court that Hansen should be required to pay interest during the delay.

15